T.C. Memo. 2020-85

UNITED STATES TAX COURT

CONSTANT B. BIDZIMOU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16250-17, 10104-18.              Filed June 15, 2020.

Constant B. Bidzimou, pro se.

Joseph P. Benoist, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  In a notice of deficiency dated May 8, 2017, respondent

determined a deficiency in Federal income tax of $5,714 and an accuracy-related

penalty under section 6662(a) of $1,142.80 for petitioner's tax year 2015.[1]  In a

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[*2]** notice of deficiency dated February 20, 2018, respondent determined a deficiency in Federal income tax of $4,673 for petitioner's tax year 2016.

After concessions,[2] the issues for decision are whether petitioner is entitled to: (1) dependency exemption deductions under section 151(a) and (c) with respect to his minor child, BB,[3] for 2015 and 2016; (2) head of household filing status under sections 1(b) and 2(b) for 2015 and 2016; (3) a child tax credit or an additional child tax credit under section 24(a) and (d), respectively, for 2015 and 2016; and (4) earned income tax credits under section 32(a) for 2015 and 2016; and (5) whether petitioner paid qualifying tuition and related expenses over and above a Federal Pell grant award, and if so, in what year he paid those expenses.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, the second supplemental stipulation of facts, the third supplemental stipulation of facts and their respective

---

[1](...continued)
Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent conceded the accuracy-related penalty under sec. 6662(a) for 2015.

[3]Tax Court Rules require a minor child to be identified by his or her initials. See Rule 27(a)(3).

[*3] exhibits are incorporated herein by this reference.[4] Petitioner resided in Kansas when he timely filed the petitions in these cases.

BB, Petitioner's Minor Child

During the years in issue petitioner had one minor child, BB, from his former marriage to Amber Bidzimou. BB was born in 2004. Petitioner and Ms. Bidzimou's divorce was finalized on August 15, 2013. Also on August 15, 2013, the 18th Judicial District, District Court of Sedgwick County, Kansas Family Law Department (District Court FLD) filed petitioner and Ms. Bidzimou's "Permanent Parenting Plan of the Parties" (parenting plan). The parenting plan gave Ms. Bidzimou sole legal custody of BB, making her the custodial parent of BB.[5] It also established periods in which BB would have "parenting time" with petitioner. The parenting plan scheduled petitioner's "parenting time" for Monday through Friday from 4 p.m. to 8:45 p.m. and Sunday from 9:45 a.m. to 6 p.m. The parenting plan alternated certain holidays between "even" years and "odd" years.

---

[4]These cases were consolidated on March 14, 2019, for trial, briefing, and opinion. Before the cases were consolidated, the parties filed a first stipulation of facts and a first supplemental stipulation of facts in the case at each docket, No. 16250-17 and No. 10104-18. After the cases were consolidated, the parties filed each remaining supplement in both.

[5]For ease of reference, the Court will refer to Ms. Bidzimou as BB's mother or the custodial parent.

**[*4]** Petitioner was granted every Father's Day and his birthday. Petitioner and BB's mother would alternate BB's birthday.

On March 20, 2014, the District Court FLD filed a "Journal Entry of Support" ordering petitioner to pay child support and maintain health insurance for BB. Petitioner appealed the child support order on March 21, 2014, but did not appeal the parenting plan awarding BB's mother sole legal custody of BB. The Court of Appeals of Kansas remanded the case to the District Court FLD. Then after another hearing, the District Court FLD filed another "Journal Entry of Support" on July 21, 2014, ordering petitioner to pay an increased amount of child support and continue to maintain health insurance for BB, and gave petitioner the "right to claim the child on all income tax filings" because he was providing health care coverage for BB. The District Court FLD ordered that child support be withheld from petitioner's paycheck. The July 21, 2014, "Journal Entry of Support" was then submitted along with the record for the Court of Appeals of Kansas to review.

On May 8, 2015, the Court of Appeals of Kansas filed a Memorandum Opinion upholding the District Court FLD's child support and income withholding order. See State ex rel. Sec'y, Dept. for Children & Families v. Bidzimou, 347 P.3d 1214 (table) (Kan. Ct. App. 2015), 2015 WL 2342875. In July 2014 the

**[*5]** Court of Appeals of Kansas found the following facts: (1) BB primarily resided with his mother, (2) petitioner had parenting time with BB from approximately Friday at 4 p.m. to Sunday evening, and (3) petitioner had the right to claim BB as a dependent for tax purposes. Petitioner then petitioned the Supreme Court of Kansas for review of the Court of Appeals of Kansas' Memorandum Opinion on July 24, 2015. Review was subsequently denied on December 22, 2016.

Petitioner did not provide this Court with any documentation in either a log, a calendar, or a journal to show that the amount of time BB was in his custody was more than the amount of time presented to the Court of Appeals of Kansas in 2014 or laid out in the parenting plan.

Petitioner's Education

In 2015 and 2016 petitioner attended Butler County Community College (BCCC) at least half time and had corresponding charges for tuition and related expenses for the fall 2015, spring 2016, and fall 2016 semesters.

Petitioner's 2015 student account statement was detailed and reflected charges for tuition, fees, and books, and payments for those charges. For the fall 2015 semester, petitioner was awarded financial aid in the form of a Federal Pell

[*6] grant and two Federal direct student loans.[6] Petitioner's spring 2015 semester financial aid proceeds were disbursed directly to BCCC on September 22, 2015. Petitioner's qualified tuition and related expenses were collected by BCCC from those proceeds. The Federal Pell grant proceeds fully paid petitioner's fall 2015 semester tuition and related expenses, and petitioner received a refund of financial aid proceeds in excess of tuition and related expenses on September 22, 2015.

Petitioner's 2016 student account statement was also detailed and reflected charges for tuition, fees, and books, and payments for those charges. For the spring 2016 semester, petitioner was awarded financial aid in the form of a Federal Pell grant and two Federal direct student loans. Petitioner's spring 2016 financial aid proceeds were disbursed directly to BCCC on February 23, 2016. Petitioner's qualified tuition and related expenses were collected by BCCC from the financial

---

[6]Federal Pell grants and Federal direct student loans are programs of the U.S. Department of Education. The U.S. Department of Education requires potential students to apply for Federal Pell grants and direct student loans by completing the Free Application for Federal Student Aid (FAFSA). The FAFSA requires the applicant to provide financial information to determine his eligibility and specifically Federal tax information from his current tax return. See https://studentaid.gov/apply-for-aid/fafsa/filling-out#documents (last visited June 9, 2020). Federal Pell grants "usually are awarded only to undergraduate students who display exceptional financial need". See https://studentaid.gov/understand-aid/types/grants/pell (last visited June 9, 2020). "A Federal Pell Grant, unlike a loan, does not have to be repaid". Id. The Court makes no finding on the accuracy of the financial or Federal tax information petitioner provided to the U.S. Department of Education.

[*7] aid proceeds.  The Federal Pell grant proceeds did not fully pay petitioner's spring 2016 semester tuition and related expenses.  Petitioner's direct student loan proceeds paid the balance, and petitioner received a refund of financial aid proceeds in excess of tuition and related expenses on February 23, 2016.

For the fall 2016 semester, petitioner was awarded financial aid in the form of a Federal Pell grant and two Federal direct student loans.  Petitioner's qualified tuition and related expenses were collected by BCCC from the financial aid proceeds.  The Federal Pell grant proceeds fully paid petitioner's fall 2016 semester tuition and related expenses, and petitioner received a refund of financial aid proceeds in excess of tuition and related fees on September 27, 2016.

Petitioner received a 2015 Form 1098-T, Tuition Statement, reflecting $1,802 billed for "qualified tuition and related expenses" and $1,444 of scholarship or grants.  The amounts billed correspond to the tuition and related fees for the fall 2015 semester and the spring 2016 semester.  The scholarship or grants correspond to the Federal Pell grant awarded for only the fall 2015 semester.

Petitioner received a 2016 Form 1098-T reflecting $928 billed for "qualified tuition and related expenses" and $3,625 of scholarship or grants.  The amounts billed correspond to the tuition and related fees for the fall 2016 semester.  The

[*8] scholarship or grants amount corresponds to the Federal Pell grants awarded for the spring 2016 semester and the fall 2016 semester.

Tax Returns and Notices of Deficiency

Petitioner, a cash basis taxpayer, timely filed his Federal income tax return for 2015, reporting adjusted gross income of $25,918 and claiming a dependency exemption deduction with respect to BB, head of household filing status, an additional child tax credit, an earned income tax credit, the American opportunity credit of $721, and nonrefundable education credits of $868. Petitioner did not attach to his 2015 return, or otherwise submit, a Form 8332, Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent, or equivalent declaration signed by the custodial parent. BB's mother, despite the District Court FLD awarding petitioner the right to claim BB, also claimed a dependency exemption deduction with respect to BB on her Federal income tax return for 2015.

Respondent issued to petitioner a notice of deficiency dated May 8, 2017, disallowing his dependency exemption deduction, head of household filing status, additional child tax credit, earned income tax credit, American opportunity credit, and nonrefundable education credits. Petitioner timely petitioned this Court for redetermination in the case at docket No. 16250-17.

**[*9]** Petitioner timely filed his Federal income tax return for 2016, reporting adjusted gross income of $21,227 and claiming a dependency exemption deduction with respect to BB, head of household filing status, a child tax credit, an additional child tax credit, and an earned income tax credit. Petitioner did not attach to his 2016 return, or otherwise submit, a Form 8332 signed by the custodial parent. BB's mother, despite the District Court FLD awarding petitioner the right to claim BB, also claimed a dependency exemption deduction with respect to BB on her Federal income tax return for 2016.

Respondent issued to petitioner a notice of deficiency dated February 20, 2018, disallowing his dependency exemption deduction, head of household filing status, child tax credit, additional child tax credit, and earned income tax credit. Petitioner timely petitioned this Court for redetermination in the case at docket No. 10104-18.

The cases at docket Nos. 16250-17 and 10104-18 were consolidated for trial, briefing, and opinion on March 14, 2019.

OPINION

I.    Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving error in the

[*10] determinations. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed on a return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under certain circumstances the burden of proof as to factual matters shifts to the Commissioner pursuant to section 7491(a). Petitioner did not argue the applicability of section 7491(a), and the record demonstrates that the burden of proof does not shift to respondent with respect to any of the issues in these cases. Accordingly, petitioner bears the burden of proof for all issues in dispute.

II.     Dependency Exemption Deduction

Section 151(a) and (c) allows taxpayers an annual exemption deduction for each "dependent" as defined in section 152. A dependent is either a qualifying child or a qualifying relative. Sec. 152(a). The requirement is disjunctive; an individual satisfying either the qualifying child requirement or the qualifying relative requirement may be claimed as a dependent. See Skitzki v. Commissioner, T.C. Memo. 2019-106, at *5; Konrad v. Commissioner, T.C. Memo. 2010-179.

**[*11]** A.     Qualifying Child

A qualifying child must meet five requirements for the taxpayer to qualify for the deduction.  Sec. 152(c).  To be a taxpayer's qualifying child under section 152(c)(1), an individual must:  (A) bear a specified relationship to the taxpayer; (B) have the same principal place of abode as the taxpayer for more than one-half of the taxable year; (C) meet certain age requirements; (D) have not provided over one-half of his or her own support for the year; and (E) not have filed a joint return with his or her spouse for the taxable year.  The pertinent factor here is the residence requirement:  The individual must have the same principal place of abode as the taxpayer for more than one-half of the taxable year.  Sec. 152(c)(1)(B).  Our caselaw has counted a child's nights spent with a parent in determining whether the child has the same principal place of abode as that parent for more than one-half of the taxable year.[7]  See Skitzki v. Commissioner, at *9; Stapleton v. Commissioner, T.C. Memo. 2015-171, at *5-*6.

---

[7]Proposed regulations would provide that the determination of whether a child has the same principal place of abode as the taxpayer for the purpose of sec. 152(c)(1)(B) is based upon the number of nights during the year that the child stays overnight at the taxpayer's dwelling or, if elsewhere, in the company of the taxpayer.  See sec. 1.152-4(c)(1), (3), Proposed Income Tax Regs., 82 Fed. Reg. 6386 (Jan. 19, 2017).

**[*12]** The parties have not stipulated and petitioner did not testify or provide any documentation in the form of a log, calendar, or journal as to when BB spent nights at petitioner's residence in 2015 and 2016. The only evidence in the record is the District Court FLD parenting plan entered in 2013 that was determined by the Court of Appeals of Kansas in 2014 not to be the actual arrangement of petitioner and BB's mother. When directly asked by the Court how many nights BB stayed at his apartment, petitioner would not give a specific number of nights. Instead, he testified that he gave BB "freedom" to decide where BB wanted stay but that BB's residence was petitioner's apartment. The Court finds his claims to be self-serving and not supported by the documentation in the record. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (finding that the Court is not required to accept uncorroborated or self-serving testimony as reliable and true). While the record reflects that petitioner financially supported BB, financial support does not mean that BB satisfied the residence requirement of section 152(c)(1)(B).

While the record reflects petitioner's financial support for BB, petitioner has failed to establish that he had custody of BB for more than one-half of BB's nights in 2015 or 2016. Additionally, petitioner has not shown that the arrangement found by the Court of Appeals of Kansas changed in 2015 or 2016. Therefore, the

[*13] Court finds that BB spent more than one-half of his nights in 2015 and 2016 with his mother. As a consequence, BB did not have the same principal place of abode as petitioner for more than one-half of 2015 or 2016, and therefore, BB is not petitioner's qualifying child for either year. See sec. 152(c)(1)(B).

B.     Qualifying Relative

An individual who is a member of the taxpayer's family may be a qualifying relative if, for the years at issue, the taxpayer provided over one-half of the individual's support, the individual's gross income was less than the section 151(d) exemption amount, and the individual was not the qualifying child of the taxpayer or of any other taxpayer. See sec. 152(d)(1); Rev. Proc. 2013-35, sec. 3.23(1), 2013-47 I.R.B. 537, 542. As discussed above, BB was not the qualifying child of petitioner. However, BB was the qualifying child of his mother, the custodial parent, because BB satisfied each requirement of section 152(c)(1) in 2015 and 2016. BB was her child, had not attained the age of 19 in 2015 or 2016, did not provide over one-half of his own support in 2015 or 2016, did not file a joint return for 2015 or 2016, and--critical to these cases--had the same principal place of abode as his mother for more than one-half of both 2015 and 2016. Because BB was a qualifying child of his mother for both 2015 and 2016, BB was

**[*14]** not a qualifying relative of petitioner for those years. See Seeliger v. Commissioner, T.C. Memo. 2017-175, at *5.

    C.    Special Rule for Divorced Parents

In the case of divorced or separated parents, section 152(e) provides a special rule notwithstanding subparagraph (B) of subsection (c)(1) to determine which parent is entitled to a dependency exemption deduction for a child. Generally, a child who is in the custody of one or both of the child's parents for more than one-half of the calendar year and receives more than one-half of his or her support from parents who are divorced or separated or who live apart at all times during the last six months of the calendar year will be considered the qualifying child of the custodial parent. Sec. 152(e)(1). Section 152(e)(4)(A) defines the custodial parent as "the parent having custody for the greater portion of the calendar year." Section 152(e)(4)(B) defines the noncustodial parent as "the parent who is not the custodial parent."

Given that BB resided with his mother for the greater number of nights during 2015 and 2016 and that she was granted sole legal custody of BB, she is the custodial parent for those years and petitioner is the noncustodial parent.

Pursuant to section 152(e), a child will be treated as a qualifying child of the noncustodial parent rather than of the custodial parent when the following

**[*15]** requirements are met: (1) the custodial parent signs a written declaration, in the manner and form prescribed by regulations, stating that she will not claim the child as a dependent for each year at issue and (2) the noncustodial parent attaches the declaration to his return for each year. Sec. 152(e)(2).

The written declaration must be an "unconditional release" of the custodial parent's claim to the child as a dependent. Sec. 1.152-4(e)(1)(i), Income Tax Regs. The declaration required under section 152(e)(2) must be made either on a completed Form 8332 or on a statement conforming to the substance of Form 8332. Miller v. Commissioner, 114 T.C. 184, 189 (2000); sec. 1.152-4(e)(1)(ii), Income Tax Regs. "Form 8332 provides an effective and uniform way for a custodial parent to make the declaration required in section 152(e)(2)(A) for the benefit of the noncustodial parent." Armstrong v. Commissioner, 139 T.C. 468, 472 (2012), aff'd, 745 F.3d 890 (8th Cir. 2014). A written declaration not on a Form 8332 "must conform to the substance of that form and must be a document executed for the sole purpose of serving as a written declaration". Sec. 1.152-4(e)(1)(ii), Income Tax Regs. Court orders, decrees, and separation agreements executed in a taxable year beginning after July 2, 2008, do not qualify. Id. subparas. (1)(ii), (5).

[*16] Petitioner argues that he was the custodial parent for both 2015 and 2016 and did not need to obtain a Form 8332 for either of the tax years in issue. As the Court has already determined, under the requirements of section 152(e), as a divorced parent petitioner fails to qualify as the custodial parent of BB for 2015 or 2016. As the noncustodial parent, petitioner was required under the regulations to obtain a signed Form 8332, or similar written statement, from the custodial parent. He did not obtain a Form 8332, or a similar written statement, from BB's mother for either 2015 or 2016; indeed, she claimed BB as a dependent on her 2015 and 2016 tax returns.

Further, the definition of custodial parent for determination of a qualifying child or relative for the purpose of claiming a child as a dependent, claiming head of household filing status, claiming a refundable child tax credit or additional child tax credit, or claiming a refundable earned income tax credit is subject to very specific requirements. A finding from a State court may be evidence in evaluating the fulfillment of those requirements, but the Code provides that State court orders alone cannot be relied upon after 1984.[8] See sec. 152(e)(2); Skitzki v.

---

[8]Before 1984 a State court decree of divorce or maintenance or support could confer entitlement to the dependency exemption upon a noncustodial parent if he or she satisfied certain support thresholds for the child at issue. The custodial parent was not required to sign a release. See sec. 152(e)(2) (1982) (repealed

(continued...)

[*17] Commissioner, at *11-*12.  The 2013 "Journal Entry of Support" entered by the District Court FLD, a State court, does not bind this Court for determining whether petitioner is entitled to a dependency exemption deduction for 2015 or 2016.  Although the Court is sympathetic to the fact that the District Court FLD's "Journal Entry of Support" entered in 2014 awarded petitioner the dependency exemption deduction, the State court order does not eliminate the additional statutory requirements for supporting documentation to determine deduction eligibility for Federal tax purposes.  Indeed, it is the Code and not State court orders that determines one's eligibility for a deduction for Federal income tax purposes.  Shenk v. Commissioner, 140 T.C. 200, 206 (2013); Seeliger v. Commissioner, at *8.

Accordingly, BB is not petitioner's qualifying child or qualifying relative under section 152(c), (d), or (e) with respect to his 2015 or 2016 tax year.  Without Form 8332, or a similar written statement containing the information prescribed by

---

8(...continued)
1984).  The 1984 amendments to sec. 152(e) terminated the use of a divorce decree or other support or maintenance instrument's allocation of the right to claim the dependency exemption deduction in determining divorced parents' entitlement to the exemption and substituted the requirement that the custodial parent sign a written declaration that he or she would not claim the deduction.  See sec. 152(e)(2); sec. 1.152-4T, Temporary Income Tax Regs., 49 Fed. Reg. 34459 (Aug. 31, 1984).

[*18] section 152(e)(2), attached to each of his 2015 and 2016 tax returns, the Court concludes that petitioner is not entitled to claim BB as a dependent for 2015 or 2016 pursuant to section 152(e).  See Swint v. Commissioner, 142 T.C. 131, 139 (2014).

III.    Head of Household Filing Status

Section 1(b) provides a special tax rate for an individual who qualifies as a head of household.  Section 2(b) defines head of household, as relevant herein, as an individual who:  (1) is unmarried as of the close of the taxable year and is not a surviving spouse and (2) maintains as his home a household that constitutes for more than one-half of the taxable year the principal place of abode, as a member of such household, of (a) qualifying child of the individual (as defined in section 152(c)), or (b) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for that person under section 151. See Rowe v. Commissioner, 128 T.C. 13, 16-17 (2007).

As discussed above, BB is not petitioner's qualifying child under section 152(c) for 2015 or 2016.  Nor is petitioner otherwise entitled to a dependency exemption deduction for BB under section 151 for 2015 or 2016.  Therefore, petitioner does not qualify for head of household filing status for 2015 or 2016.

**[\*19]** IV.     Child Tax Credit and Additional Child Tax Credit

A taxpayer may claim a child tax credit for an individual who is his "qualifying child" as defined in section 152(c) and has not attained age 17 during the taxable year.  Sec. 24(a), (c).  Under section 24(d) a portion of that credit--commonly referred to as the additional child tax credit--is refundable.

Because BB is not petitioner's qualifying child under section 152(c) for 2015 or 2016, petitioner is not entitled to either a child tax credit or an additional child tax credit for 2015 or 2016.

V.     Earned Income Tax Credit

Section 32(a)(1) allows an eligible individual an earned income tax credit to offset that individual's tax liability, subject to a phaseout explained in section 32(a)(2).  The amount of the credit to which an eligible individual is entitled increases if the individual has a qualifying child.  Sec. 32(b), (c)(3).  Again, a qualifying child for purposes of section 32 is generally defined as an individual who is the taxpayer's "qualifying child" as defined in section 152(c).  Sec. 32(c)(3)(A).  As discussed supra, BB is not petitioner's qualifying child under section 152(c) for 2015 or 2016.

A taxpayer without any qualifying children may be eligible for the earned income tax credit for 2015 and 2016, but only if his adjusted gross income did not

[*20] exceed $14,820 for 2015 and $14,880 for 2016 if he was not filing a joint return. See Rev. Proc. 2014-61, sec. 3.06(1), 2014-47 I.R.B. 860, 863; Rev. Proc. 2015-53, sec. 3.06(1), 2015-44 I.R.B. 615, 619. Petitioner's adjusted gross income for both 2015 and 2016 exceeded those amounts. Therefore, he is not entitled to the earned income tax credit for 2015 or 2016.

VI.    Education Credits

The Code allows for a variety of education credits, including the American Opportunity Credit. See sec. 25A(i). A taxpayer may claim a credit for qualified tuition and related expenses paid with proceeds from a student loan, even if those proceeds are paid by the lender directly to the educational institution on the student's behalf. See sec. 1.25A-5(b)(1), Income Tax Regs.; see also Terrell v. Commissioner, T.C. Memo. 2016-85. Loan proceeds disbursed directly to an educational institution are treated as being paid by the student on the date the institution credits the proceeds to the student's account. See sec. 1.25A-5(e)(3), Income Tax Regs.; see also Terrell v. Commissioner, at *5-*6.

The record includes petitioner's 2015 and 2016 student account statements and 2015 and 2016 Forms 1098-T. The 2015 student account statement shows tuition and related expenses for the fall 2015 semester. It further shows that a Federal Pell grant was awarded to petitioner fully covering his tuition and related

[*21] expenses. Because petitioner did not pay his qualified tuition and related expenses in 2015, he is not entitled to an education credit or an American Opportunity Credit for 2015. See sec. 25A(g)(2); sec. 1.25A-5(c)(1), Income Tax Regs.

The 2015 student account statement also shows tuition and related expenses for the spring 2016 semester. The 2016 student account statement shows tuition and related expenses for the fall 2016 semester. The 2016 student account statement further shows that a Federal Pell grant was awarded to petitioner for the spring 2016 semester and the fall 2016 semester. Petitioner's total 2016 Federal Pell grant award did not fully cover his qualified tuition and related expenses. Petitioner used loan proceeds from Federal student loans to pay the difference between his Federal Pell grant awards and his qualified tuition and related expenses.

BCCC may have charged a portion of petitioner's spring 2016 semester expenses to his account in 2015, but the loan proceeds that he used to pay tuition and related expenses were not disbursed or credited to his account until 2016. He is therefore treated as having paid those expenses in 2016. Since he is a cash basis taxpayer, 2016 was the proper year for which to credit his spring 2016 semester

[*22] expenses. See sec. 1.25A-5(e)(3), Income Tax Regs.[9]  Therefore, petitioner

is entitled to an education credit for 2016 for the portion of his qualified tuition

and related expenses not paid with Federal Pell grant proceeds but paid with

proceeds from Federal direct student loan proceeds.  See sec. 1.25A-5(c)(1),

(e)(3), Income Tax Regs.

VII.   Conclusion

Petitioner is not BB's custodial parent, and BB is not his qualifying child or

relative under section 152(c), (d), or (e) for 2015 or 2016.  Petitioner did not

obtain Form 8332 or a similar written statement from BB's mother, the custodial

parent, to claim a dependency exemption deduction; thus, he is not entitled to one.

Additionally, because BB is not petitioner's qualifying child under section 152(c),

petitioner is not entitled to head of household filing status and a child tax credit or

additional child tax credit for 2015 or 2016.  Neither is he entitled to an earned

income tax credit for 2015 or 2016 because BB is not his qualifying child under

---

[9]Generally an education credit is allowed only for payments of qualified tuition and related expenses for an academic period beginning in the same taxable year that the payment is made.  Sec. 1.25A-5(e)(1), Income Tax Regs.  If a taxpayer prepays qualified tuition for an academic period that begins during the first three months of the taxpayer's next taxable year, the education credit is allowed for the year the payment is made.  Sec. 25A(g)(4); sec. 1.25A-5(e)(2), Income Tax Regs.  As discussed supra, petitioner paid his spring 2016 semester tuition in 2016 when his loan was disbursed.  Therefore the prepayment rule has no relevance here.

[*23] section 152(c) and his adjusted gross income exceeded $14,820 for 2015 and $14,880 for 2016.

Finally, petitioner is not entitled to an education credit or an American Opportunity Credit for 2015 because all his qualifying tuition and related expenses were paid with a Federal Pell grant. However, petitioner is entitled to an education credit for 2016 because he paid a portion of his qualifying tuition and related expenses in 2016.

The Court has considered all the other arguments of the parties, and to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent in docket No. 16250-17 as to the deficiency and for petitioner as to the penalty.

Decision will be entered under Rule 155 in docket No. 10104-18.